IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 5, 2016

**STATE OF TENNESSEE v. JOSEPH HARRIS**

**Appeal from the Criminal Court for Shelby County**
**No. 11-04290    James M. Lammey, Jr., Judge**

_____

**No. W2015-00500-CCA-R3-CD  -  Filed May 3, 2016**

_____

The Defendant, Joseph Harris, appeals as of right from his jury conviction for aggravated robbery.  On appeal, the Defendant contends (1) that the evidence is insufficient to support his conviction because violence was only used after the taking of the automobile had been completed; (2) that the trial court should have declared a mistrial when an alleged violation of Bruton v. United States, 391 U.S. 123 (1968), took place by a witness's reference to a co-defendant's statement that incriminated the Defendant; (3) that the trial court should have instructed the jury on joyriding as lesser-included offense of theft; and (4) that the trial court should have issued a special instruction on when a "taking" occurred by including additional language from State v. Swift, 308 S.W.3d 827 (Tenn. 2010).  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Josie S. Holland (on appeal), and Linda L. Holmes (at trial), Memphis, Tennessee, for the appellant, Joseph Harris.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Raymond J. Lepone and P. Neal Oldham, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## FACTUAL BACKGROUND

On July 12, 2011, the Defendant and Joshua Cribbs were charged with aggravated robbery based upon their alleged involvement in stealing a vehicle from A.C. Wharton III ("the victim"), a Class B felony. See Tenn. Code Ann. § 39-13-402. A joint trial was held in September 2014.[1]

At trial, the evidence in the light most favorable to the State showed that, on January 7, 2011, sometime between 12:30 a.m. and 1:00 a.m., the victim stopped at a Mapco gas station in Memphis to purchase some stomach medication. He sat in his car, a black 2009 Pontiac G5, for an undisclosed length of time before exiting the vehicle.[2] Because he did not anticipate being away from his vehicle for very long, he left the car running with the driver's side door slightly ajar. Due to security concerns, customers were not allowed inside the store after a certain hour. The victim approached the store's window around 1:00 a.m. and ordered some stomach medicine, according to the gas station cashier, Ms. Cynthia Buckner.

While the victim was waiting at the store's window for the cashier to finish conducting the transaction, the Defendant arrived in the gas station's parking lot along with Cribbs and Lepoleon Rogers, who were all passengers in a vehicle being driven by Jeremy Simpson. Rogers testified that, upon seeing the unattended vehicle, the Defendant said to Cribbs, "We need that car[,]" and told Cribbs to "[g]o get the car." Cribbs did as instructed—he exited Simpson's car and approached the victim's vehicle.

Back at the store window, Ms. Buckner saw what was taking place and alerted the victim that someone was getting into his car. According to Ms. Buckner, the man was inside the automobile with the door shut when the victim returned to the passenger's side of the vehicle. The victim stated that, as he approached his car, he looked through the car's window and saw a man point a gun at him and motion "as if to say, 'Back up.'" Ms. Buckner noticed that "something" was pointed at the victim and saw him "jump back" with his hands in the air. The man then drove away in the car, and both the victim and Ms. Buckner telephoned the police. Additionally, the scene was captured on video surveillance.[3]

---

[1] Terrance Simmons was also charged in the same indictment with theft of property valued at $10,000 or more but less than $60,000 for his role in the taking of the victim's car. However, Simmons was not tried along with Cribbs and the Defendant.

[2] The car belonged to the victim's then girlfriend, who was his wife by the time of trial.

[3] Despite our efforts, this court has been unable to view the video recording.

Sergeant James Taylor with the Memphis Police Department ("MPD") responded to the call reporting the robbery at the Mapco gas station. After determining that the vehicle had been equipped by Acceptance Credit with a Global Positioning System ("GPS") tracker, Sgt. Taylor was able to locate the victim's vehicle later that same morning around 10:15 a.m. at a South Memphis gas station. After spotting the automobile, Sgt. Taylor had Acceptance Credit "kill the vehicle" to prohibit the driver from leaving the parking lot. According to Sgt. Taylor, there were two individuals in the vehicle at this time—the Defendant, the driver, and Cribbs, a passenger. When the officers converged on the vehicle, the Defendant "jumped out and ran on foot." The Defendant was ultimately captured, and both men were arrested. "[A] parking card that belonged to [the victim]" was found in the Defendant's pocket. The Defendant was escorted to the police station where he again tried to escape by using a paper clip to uncuff himself and attempting to leave.

Following their arrests, the Defendant and Cribbs were interviewed by the police. Cribbs gave several versions of his to story MPD Sergeant John Simpson before a version was reduced to writing. In his written statement, Cribbs admitted that he took the victim's car, stating simply, "I just took the man's car." Cribbs further described that he "picked up the [BB] gun off the floorboard" of Simpson's car, which had been spray-painted black,[4] got out of the vehicle being driven by Simpson, and walked over to the victim's vehicle and got inside. Cribbs continued that, when the victim "walked up to the passenger[']s side window . . . [, he] put the [BB] gun on the passenger[']s seat and pulled off[.]" Cribbs explained to Sgt. Simpson that he took the car "[b]ecause if [he] didn't[,] they told [him] that they were going to hurt [him] or shoot [him]"; that he was in a gang, which was "the problem"; and that, "if it was just up to [him, he] would have never taken the car."

The Defendant also gave a written statement. Although he acknowledged that he was driving the stolen vehicle when he was stopped by police, the Defendant denied that he participated in the robbery and claimed that they told Cribbs "not to do it but he still jumped out and did it anyway." The Defendant further explained that he ran from the police at the gas station "[b]ecause [he] was scared and did not know what was going on" and that he tried to leave the police station later because he "was scared" due to the fact that his brother had "got killed" there. When asked why the victim's parking card was found on his person, the Defendant stated, "I was looking at it and just stuck [it] in my pocket and got ten dollar[']s worth of gas[,] and that was when y[']all pulled up."

---

[4] Sgt. Simpson recalled the victim's describing a silver handgun.

-3-

The victim was shown a photographic array that same day. He identified Cribbs as the man who got inside his vehicle at the gas station, displayed a weapon, and drove off.[5]

Following the conclusion of the State's proof, the Defendant was convicted as charged, and the trial court sentenced him to a term of nine years' incarceration to be served at 85%. This appeal followed.[6]

## ANALYSIS

On appeal, the Defendant takes exception to the sufficiency of the convicting evidence; to the trial court's failure to declare a mistrial after an alleged Bruton violation; to the trial court's omission of a joyriding charge as a lesser-included offense of theft; and to the trial court's refusal to issue a specific jury instruction on what constitutes a "taking." We address each in turn.

### I. Sufficiency of the Evidence

The Defendant argues that the evidence is insufficient to support his conviction for aggravated robbery "because the evidence prove[d] that [Cribbs] committed a theft of a 2009 Pontiac followed by an aggravated assault of [the victim]." Therefore, the Defendant asserts, because the use of violence "must precede or be concomitant or contemporaneous with the taking to constitute robbery," State v. Owens, 20 S.W.3d 634, 636 (Tenn. 2000), he cannot be guilty of any degree of robbery. The State replies that Owens is distinguishable because the theft of the vehicle in this case was not complete until Cribbs brandished the weapon, frightening the victim away, and then drove off.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

---

[5] However, at trial, the victim mistakenly identified the Defendant, rather than Cribbs, as the person he saw steal his automobile.

[6] By order dated May 28, 2015, this court granted the Defendant's request to accept a late-filed notice of appeal.

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "is the same whether the conviction is based upon direct or circumstantial evidence." Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

A conviction for aggravated robbery, as relevant to this case, requires proof that the Defendant committed an "intentional or knowing theft of property from the person of another by violence or putting the person in fear" and that the robbery was "accomplished with a deadly weapon or by display of any article fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. §§ 39-13-401(1), -402(1). A "taking" or theft of property occurs if, with intent to deprive the owner of property, a person knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103.

The Defendant, citing Owens, 20 S.W.3d 634, contends that Cribbs's use of violence or fear by display of a deadly weapon was subsequent to the taking of the vehicle and was simply too temporally removed from the theft to support the jury's verdict against him for any robbery offense. In Owens, the Tennessee Supreme Court held that evidence would not support a finding that a shoplifter had committed robbery when, after being confronted, the shoplifter (1) dropped the stolen merchandise, (2) fled the store, and (3) had been pursued at least five blocks by security prior to turning and threatening a guard with a box cutter. 20 S.W.3d at 638. In so holding, the Owens court reasoned that "the use of violence or fear must precede or be contemporaneous with the taking of property from the person to constitute the offense of robbery under [Tennessee Code Annotated section] 39-13-401." Id. at 641.

Ten years later, in State v. Swift, our supreme court reiterated the holding in Owens and said:

> We specifically rejected the continuous offense theory under which robbery is defined to extend to situations in which force is used after the

taking, such as to retain property or facilitate escape. [Owens, 20 S.W.3d.] at 640-41. We concluded in Owens that "the use of violence or fear was subsequent to the taking and temporally remote." Id. at 641.

308 S.W.3d 827, 831 (Tenn. 2010). The Swift court further clarified, "The temporal proximity between the taking of property and the use of violence or fear is the sole relevant factor" that an "analysis in Owens requires [the reviewing court] to ascertain[.]" 308 S.W.3d 827, 831 (Tenn. 2010).[7]

The Defendant asserts that the taking in this case occurred when Cribbs got into the victim's vehicle and shut the door because it was then that Cribbs was in physical control of the vehicle. He urges this court to apply the totality of the circumstances approach and the factors enumerated by our supreme court in State v. Lawrence, 849 S.W.2d 761 (Tenn. 1993).[8] Applying those factors, the Defendant submits that the taking of the victim's vehicle occurred prior to any use of violence or fear. However, Lawrence dealt with factors for the trier of fact to take into account when considering whether an accused is guilty of driving under the influence based upon physical control of the vehicle. As stated above, a "taking" or theft of property occurs if, with intent to deprive the owner of property, a person knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103. We decline to adopt the Lawrence factors into our analysis simply because the theft of property here involved an automobile.

Moreover, this case is a far cry from Owens. Here, the entire episode occurred within a matter of minutes—long enough for the victim to get out of the car, go to the gas station window, and ask for stomach medication. As she was completing the transaction, the cashier, observing Cribbs's actions, alerted the victim that someone was getting inside his vehicle. When the victim approached his automobile, Cribbs, who had already closed the driver's side door, brandished a weapon, causing the victim to retreat. Cribbs then drove away in the victim's Pontiac G5. The evidence is clear that Cribbs committed the theft of the victim's car by violence that occurred contemporaneously with the taking of that automobile. Moreover, it is apparent that Cribbs, who retrieved the BB gun from the floorboard of Simpson's vehicle, intended to use violence against the victim, if necessary, in order to take the victim's car. This is not a case in which violence was used after the

---

[7] Both Swift and Owens examined what is, or is not, a robbery offense in the context of theft by "shoplifting."

[8] These factors include: the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise. Lawrence, 849 S.W.2d at 765.

taking, such as to retain property or facilitate escape. The evidence suffices to sustain the Defendant's aggravated robbery conviction against his Owens challenge. See, e.g., State v. Kearn Weston, No. W2012-00255-CCA-R3-CD, 2012 WL 5986542, at *4 (Tenn. Crim. App. Nov. 30, 2012) ("Appellant succeeded in committing the theft of the victim's wallet as a result of his violence toward the victim."); State v. Elgene Kentea Porter, No. M2010-01628-CCA-R3-CD, 2012 WL 1080280, at *10 (Tenn. Crim. App. Mar. 30, 2012) (holding that evidence was sufficient to support robbery conviction where the taking of the victim's property, consisting of her driver's license and a knife, occurred after defendant raped the victim, but threats and acts of violence continued until his exit from her apartment); State v. Charles Steven Shivers a.k.a Scott Kevin McNeil, No. M2009-02079-CCA-R3-CD, 2011 WL 6382552, at *8 (Tenn. Crim. App. Dec. 19, 2011) (concluding that "whether the theft at issue [was] deemed to be one of drugs, money, or both," "the evidence establishe[d] that the Owens proximity test [was] satisfied by actions both 'preceding' and 'contemporaneous' to the theft[,]" and was, therefore, sufficient to support defendant's especially aggravated robbery conviction).

The Defendant also argues that "the evidence of [his] criminal responsibility [for Cribbs's actions] is weak." A person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both. Tenn. Code Ann. § 39-11-401(a). Further, a person is criminally responsible for an offense committed by the conduct of another, if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Tenn. Code Ann. § 39-11-402(2). While not a separate crime, criminal responsibility is a theory by which the State may alternatively establish guilt based on the conduct of another. Dorantes, 331 S.W.3d at 386 (citing State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999)). No specific act or deed needs to be demonstrated by the State, and furthermore, the presence and companionship of an accused with the offender before and after the offense are circumstances from which participation in the crime may be inferred. State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). However, to be convicted, "the evidence must establish that the defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission." Dorantes, 331 S.W.3d at 386 (citing State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994); State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)).

In order to sustain the Defendant's aggravated robbery conviction, the State had to show that the Defendant was criminally responsible for the actions of Cribbs. Rogers testified that the Defendant said, "We need that car," and that he then instructed Cribbs to "[g]o get" it. Cribbs's statement to Sgt. Simpson indicated that he stole the vehicle because he was told to do so. A few hours after the robbery the Defendant was arrested

driving the stolen vehicle, and he was accompanied by Cribbs, who was a passenger in the vehicle. The Defendant was in possession of the victim's "parking card" when he was arrested. This is sufficient evidence of the Defendant's criminal responsibility. Accordingly, this issue is without merit, and the Defendant's aggravated robbery conviction is affirmed.

## II. *Bruton violation*

Based upon <u>Bruton v. United States</u>, 391 U.S. 123 (1968),[9] the Defendant argues that the trial court should have declared a mistrial when his attorney attempted to impeach Sgt. Simpson with co-defendant Cribbs's statement implicating the Defendant. The State responds that the trial court did not commit plain error when defense counsel invited the potential <u>Bruton</u> violation.

On direct examination, the State inquired about various statements given by Cribbs to Sgt. Simpson, and Cribbs's counsel then conducted a cross-examination of Sgt. Simpson. Cribbs's statements had already been redacted to avoid any <u>Bruton</u> problems. However, on cross-examination by the Defendant's counsel, the following colloquy occurred:

Q. . . . And if I understood your testimony, you testified that Mr. Cribbs told you he took that Pontiac because someone threatened to hurt him or shoot him?
A. That's correct.
Q. Did he say who threatened [him]?
A. [The Defendant].
Q. And that's what Mr. Cribbs told you?
A. Yes.
Q. Why is that not in his statement?

At the request of the State, a bench conference ensued.

The Defendant's attorney admitted that she had "opened the door" to admission of Cribbs's statement, and the State requested to introduce the entire statement. The jury was excused from the courtroom, and further discussion took place. Ultimately, the trial court ruled that the State could introduce the complete un-redacted version of Cribbs's

---

[9] In <u>Bruton</u>, the United States Supreme Court held that where two defendants are jointly tried, admission of one defendant's pre-trial statement implicating the co-defendant violates the co-defendant's Sixth Amendment right to confront and cross-examine witnesses against him. 391 U.S. at 136-37. "[The <u>Bruton</u>] rule is designed to avoid presenting evidence to the jury without affording them the opportunity to evaluate the context in which the statement was made and the veracity of its maker." <u>State v. Zirkle</u>, 910 S.W.2d 874, 891 (Tenn. Crim. App. 1995) (citing <u>Douglas v. Alabama</u>, 380 U.S. 415, 418 (1965)).

statement and that it would issue proper instructions on how the jury was to consider the evidence.

The trial judge was planning to have the jury returned to the courtroom and recess for the day when the State announced, "I think we may be coming to a conclusion, Your Honor, if we may just have two minutes." After a brief pause in the proceedings, the State averred that, rather than admitting Cribbs's entire statement, it would be sufficiently appeased if Sgt. Simpson was permitted to explain on redirect examination that the statement had been redacted. Defense counsel had no objections to this remedy.

The jury was returned to the courtroom, and Sgt. Simpson returned to the witness stand. The Defendant's lawyer stated that she had completed cross-examination. On redirect examination, Sgt. Simpson testified that the "last thing" the Defendant's lawyer asked about—"why something wasn't in Mr. Cribbs['s] statement that referred to [the Defendant]"—was, in fact, contained in the original statement that he took from Cribbs. Sgt. Simpson clarified that "some rules of court prevent[ed] it" from being in the "court's version" that he had previously read to the jury but that he answered the question honestly when the Defendant's attorney asked about the information. He also stated that he had nothing to do with the redaction. That concluded the State's redirect examination. Cribbs's attorney then conducted a brief recross of Sgt. Simpson regarding a different issue, and the witness was excused.

Although the issue was raised in the Defendant's motion for new trial,[10] any Bruton error was unattended by a contemporaneous objection at trial. See Tenn. R. Evid. 103 (stating that a timely objection "stating the specific ground of objection" is necessary to preserve claim of erroneous admission of evidence); see also State v. Robert Simerly, No. E2002-02626-CCA-R3-CD, 2004 WL 443294, at *5 (Tenn. Crim. App. Mar. 11, 2004). Accordingly, the Defendant has waived our consideration of this claim. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). It is thus reviewable only for plain error. See Tenn. R. App. P. 36(b) (stating that this court may notice an error as plain error if the error affected the substantial rights of an accused and if notice of the error is necessary to do substantial justice); see also State v. Ogle, 666 S.W.2d 58, 60 (Tenn. 1984) (noting that objection was waived and finding no plain error because "the Bruton rule should only be applied when the non-testifying co-defendant's statement constitutes 'a significant portion of the evidence of guilt,' and . . . if 'ample

---

[10] The State incorrectly asserts that the Defendant failed to raise the issue in his motion for new trial. The trial court allowed the Defendant to orally amend his motion for new trial to include this issue, and this amendment was later reduced to writing. See Tenn. R. Crim. P. 33(b).

evidence was available to demonstrate petitioner's guilt without reliance upon his co-defendant's confession,' the <u>Bruton</u> violation would be considered harmless error").

In determining whether plain error review is appropriate, the following factors must be established:

> (a) the record . . . clearly establish[es] what occurred in the trial court;
> (b) a clear and unequivocal rule of law [has] been breached;
> (c) a substantial right of the accused [has] been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and
> (e) consideration of the error is "necessary to do substantial justice."

<u>State v. Smith</u>, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting <u>State v. Adkisson</u>, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). On appeal, the defendant has the burden of establishing that these five factors are met. <u>State v. Gomez</u>, 239 S.W.3d 733, 737 (Tenn. 2007) (citing <u>State v. Bledsoe</u>, 226 S.W.3d 349, 355 (Tenn. 2007)). The appellate court need not consider all five factors if any single factor indicates that relief is not warranted. <u>Smith</u>, 24 S.W.3d at 283.

However, the Defendant makes no argument for this court to undertake plain error review. Importantly, the Defendant makes no real argument at all other than stating the general principles of the <u>Bruton</u> case, even providing the principle that the Defendant cannot take advantage of an alleged <u>Bruton</u> violation "which he himself committed, or invited, induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct." <u>See</u> <u>State v. Robinson</u>, 146 S.W.3d 469, 493 (Tenn. 2004) (quoting <u>Norris v. Richards</u>, 246 S.W.2d 81, 85 (Tenn. 1952)) (internal quotation marks omitted); <u>State v. Jack Price and Larry Thomas Cochran</u>, No. E2011-01050-CCA-R3-CD, 2013 WL 5371679, at *13-14 (Tenn. Crim. App. Sept. 26, 2013). The failure to include an argument satisfying the requirements of Rule 27(a)(7), Tennessee Rules of Appellate Procedure, constitutes further waiver of the issue. <u>See also</u> Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citations to authorities, or appropriate references to the record will be treated as waived by this court."). Because the Defendant's attorney invited any <u>Bruton</u> violation and agreed to the remedy proposed by the State at trial, the Defendant has failed to show that a clear and unequivocal rule of law was breached or that consideration of the error is "necessary to do substantial justice[,]"and he is, therefore, not entitled to plain error relief. <u>See</u> <u>Adkisson</u>, 899 S.W.2d at 641-42 (footnotes omitted).

### III. Jury Instructions

The Defendant has raised two issues with regard to the jury instructions: (1) that the trial court erred by failing to instruct the jury on the Class A misdemeanor of

unauthorized use of a vehicle as a lesser-included offense of theft of property; and (2) that the trial court erred by not giving a special instruction on when the "taking" of the automobile occurred. It is well-recognized that a defendant in a criminal case "has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000); see State v. Leath, 461 S.W.3d 73, 105 (Tenn. Crim. App. 2013). When reviewing jury instructions on appeal to determine whether they are erroneous, this court must "review the charge in its entirety and read it as a whole." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). A jury instruction is considered "prejudicially erroneous" only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." Id. Because the propriety of jury instructions is a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. Carpenter v. State, 126 S.W.3d 879, 892 (Tenn. 2004); State v. Smiley, 38 S.W.3d 521, 524 (Tenn. 2001). With these tenets in mind, we turn to the Defendant's claims with regard to the jury instructions in this case.

### A. Lesser-Included Offense

The Defendant contends that the trial court committed plain error by not instructing the jury on the unauthorized use of a vehicle or joy-riding, Tennessee Code Annotated section 39-14-106, as "a lesser-included offense of theft" of property under Tennessee Code Annotated section 39-14-103. Again providing only minimal argument in support, the Defendant asserts that, because the element of his intent was in question, he was entitled to have the jury instructed on the unauthorized use of a vehicle "as a lesser-included offense of theft[,]" and accordingly, this court should reverse his aggravated robbery conviction. The State first argues that the trial court's failure to instruct on unauthorized use of a vehicle did not amount to plain error because there was insufficient evidence to support the issuance of a jury instruction on that lesser-included offense. The State continues that the jury rejected the lesser-included offense of theft, and thus necessarily all other lesser-included offenses of theft, when it found the Defendant guilty of the greater offense, aggravated robbery, and consequently, that any failure to so instruct was harmless error and not subject to relief via plain error review.

The Defendant concedes that he did not raise the issue in the trial court and that the issue is reviewable on appeal only for plain error. "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b); see also State v. Page, 184 S.W.3d 223, 229-30 (Tenn. 2006) (determining that, when a jury instruction is waived for failure to request it in writing, an appellate court may still review the issue for plain error).

-11-

Applying the aforementioned plain error requisites, we first conclude that no clear and unequivocal rule of law has been breached. When an issue is raised regarding the trial court's failure to instruct on a lesser-included offense, we must determine whether the evidence supports an instruction on the lesser-included offense. State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002). The joyriding statute at issue provides that "[a] person commits a Class A misdemeanor who takes another's automobile, . . . or other vehicle without the consent of the owner and the person does not have the intent to deprive the owner thereof." Tenn. Code Ann. § 39-14-106. In State v. Brooks, this court held that a defendant was entitled to have the jury instructed on theft and unauthorized use of a vehicle where the defendant was intoxicated and the element of his "intent to deprive" was in question. 909 S.W.2d 854, 860-61 (Tenn. Crim. App. 1995). We agree with the State that, here, by contrast, there was no evidence presented by the Defendant to support a conclusion that he ever intended to return the vehicle or that he lacked the necessary intent to deprive the victim of the automobile, the vehicle being taken at gunpoint and the Defendant's being apprehended while driving it. See, e.g., State v. Troy Ector, W2011-02039-CCA-R3-CD, 2012 WL 3201985, at *8 (Tenn. Crim. App. Aug. 8. 2012) (concluding same where victim's vehicle was taken at gunpoint, never returned, and defendant was caught driving it); State v. William Belchia, No. W2004-01168-CCA-R3-CD, 2005 WL 729166, at *5-6 (Tenn. Crim. App. Mar. 30, 2005) (finding joyriding instruction was not warranted where defendant kept rental vehicle a full thirty days beyond date it was to be returned and defendant was located in possession of vehicle). Therefore, plain error is not indicated for the trial court's failure to instruct on joyriding as a lesser-included offense of unauthorized use of a vehicle.[11]

---

[11] The State concedes that joyriding under Tennessee Code Annotated section 39-14-106 may be a lesser-included offense of the theft of an automobile in appropriate cases. This court has recognized that unauthorized use of a vehicle is a lesser included offense of theft of a vehicle because it satisfies part (b) of the test outlined in State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999). State v. David Michael Gamble, No. 03C01-9812-CR-00442, 2000 WL 45718, at *6 (Tenn. Crim. App. Jan. 21, 2000). However, we note that, recently, this court has held that our legislature's 2009 amendment of Tennessee Code Annotated section 40-18-110, which codified the test established by State v. Burns for determining whether an offense qualified as a lesser-included offense of the charged offense, eliminated part (b) of the Burns test. State v. John J. Ortega, Jr., No. M2014-01042-CCA-R3-CD, 2015 WL 1870095, at *8-10 (Tenn. Crim. App. Apr. 23, 2015) (citing Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999)); see also State v. Glen B. Howard, No. E2014-01510-CCA-R3-CD, 2015 WL 4626860, at *15 (Tenn. Crim. App. Aug. 4, 2015), perm. app. granted (Tenn. Dec. 11, 2015). In its order granting permission to appeal, our supreme court stated that it was "particularly interested in the question of whether the Court of Criminal Appeals erred in ruling that aggravated sexual battery is not a lesser-included offense of rape of a child" and directed the parties "to discuss whether part (b) of the test set forth in [Burns] survived the 2009 amendments to [Tennessee Code Annotated section 40-18-110]." See State v. Glen B. Howard, No. E2014-01510-SC-R11-CD (Tenn. Dec. 11, 2015) (order). Because it is unnecessary to our analysis, we decline to address whether joyriding survives as a lesser-included of theft of property under part (b) of the Burns test.

Also, when an issue is raised regarding the trial court's failure to instruct on a lesser-included offense, we must determine whether the failure to instruct on the lesser-included offense constitutes harmless error. Allen, 69 S.W.3d at 187; see also State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). "The error may be harmless when the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses." Allen, 69 S.W.3d at 189 (citing State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998)). We again agree with the State. Any error in failing to give a lesser-included instruction on unauthorized use of an automobile was harmless because the Defendant was found guilty of the highest offense, aggravated robbery, and in so doing, the jury necessarily rejected all of the other lesser-included offenses charged, which included robbery, aggravated assault, and theft of property valued at $10,000 or more but less than $60,000, respectively. Therefore, the Defendant has not shown that a substantial right of his has been adversely affected or that consideration of the error is necessary to do substantial justice. After an examination of the record, we conclude that the plain error doctrine can afford no relief to the Defendant on this issue.

### B. Special Instruction

The Defendant asserts that the trial court should have given an additional instruction containing language that "distinguish[ed] when the 'taking' of the car occurred." The Defendant notes that the State contended that the taking of the automobile was complete when Cribbs brandished the weapon and then drove away but that the defense argued that the taking was complete when Cribbs was inside the Pontiac because that was when he "began to exercise control over the vehicle." According to the Defendant, "[h]ad the trial court made the additional instructions requested by defense counsel, the jury would have been able to make the determination that no aggravated robbery was committed on January 7, 2011." The State responds that the trial court properly denied the Defendant's oral and non-specific request for a special jury instruction.

We agree with the State that the Defendant has waived full appellate review of this issue because the Defendant failed to file a written request for such a special jury instruction. See Tenn. R. Crim. P. 30(a); Leath, 461 S.W.3d at 107 (citing State v. Mackey, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982) (stating that Rule 30 "envisions that such requests be made in writing" and that oral requests for instructions are not sufficient for an appellate court to place a trial court in error for rejecting a requested jury instruction)). Failure to submit a special request in writing constitutes a waiver of the issue. See State v. Vickers, 985 S.W.2d 1, 8 (Tenn. Crim. App. 1997); State v. Brewer, 932 S.W.2d 1, 15 (Tenn. Crim. App. 1996). The issue is still reviewable for plain error. Page, 184 S.W.3d at 230.

The Defendant admits that the trial court did include in the jury instruction on aggravated robbery the "temporal proximity" language used in Swift and suggested in the Tennessee Pattern Jury Instructions: "The alleged fear or violence used in the taking of the property must precede, accompany or occur at the same time as the taking to constitute an element of aggravated robbery." T.P.I.—Crim. 9.02 (citing Swift, 308 S.W.3d at 831; Owens, 20 S.W.3d at 636) (stating that "[t]he trial judge should use this language if there is a jury question as to whether or not the fear or violence occurred after the taking"). Although the Defendant does not articulate the additional instruction he wished the trial court to give, we note that Cribbs's counsel requested that the trial court "add a second sentence" from the Swift case to the standard pattern instruction that aggravated robbery "specifically excludes situations in which force is used after the taking such as to retain property or facilitate escape." See Swift, 308 S.W.3d at 830-31 ("We specifically rejected the continuous offense theory under which robbery is defined to extend to situations in which force is used after the taking, such as to retain property or facilitate escape." (citing Owens, 20 S.W.3d at 640-41)). However, this court has never held that a special instruction on when a "taking" occurred is required in addition to the standard jury instruction on aggravated robbery that was given by the trial court in this case. That is, the record does not clearly demonstrate that a clear and unequivocal rule of law was breached.

Moreover, the trial court provided the jury with the proper definitions of "obtain," "exercise control over property," and "deprive." See T.P.I.—Crim. 9.02 (citing Tennessee Code Annotated section 39-11-106 subsection (8) for the definition of "deprive" and subsection (24) for the definition of "obtain"; and stating in footnote 7 that the definition of "exercise control over property" "comes from Law Revision Commission, Tennessee Criminal Code and Code of Criminal Procedure, [section] 39-1903 comment (Proposed Final Draft 1973)"). It cannot be said that the instructions given by the trial court were prejudicially erroneous, i.e., that they failed to fairly submit the legal issues or that the jury was misled as to the applicable law. See Hodges, 944 S.W.2d at 352. Once more, the Defendant has not shown that a substantial right of his has been adversely affected or that consideration of the error is necessary to do substantial justice. See State v. Caldwell, 671 S.W.2d 459, 465-66 (Tenn. 1984). There is no plain error, and the Defendant is not entitled to relief.

-14-

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, we affirm the Defendant's conviction for aggravated robbery.

_____
D. KELLY THOMAS, JR., JUDGE